UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
EQUAL EMPLOYMENT OPPORTUNITY                                 :
COMMISSION,                                                  :
                                        Petitioner,          :          24 Misc. 125 (LGS)
                       -against-                             :
                                                             :          **<u>ORDER & OPINION</u>**
AMAZON.COM SERVICES LLC,                                     :
                                        Respondent.          :
                                                             :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Petitioner the United States Equal Employment Opportunity Commission ("EEOC")

commenced this action with a petition (the "Petition") to require Respondent Amazon.com

Services LLC to comply with the administrative subpoena (the "Subpoena") issued by Petitioner

on December 13, 2023.  For the reasons below, the Petition is granted.

## I.    BACKGROUND

      Respondent is headquartered in Seattle, Washington, and operates fulfillment centers

across the country.  During 2020 and 2021, Charging Parties Cristina Rios, Daisy Leon, Natalia

Little, Tanaisha Harris-Harper and Aniyah Johnson each filed charges of discrimination with

Petitioner against Respondent, alleging sex and/or disability discrimination based on their

pregnancies during their employment at Respondent's fulfillment centers.  Specifically, the

charges allege that Respondent discriminated against the Charging Parties by failing to

accommodate their pregnancies or engage in a meaningful interactive process and by forcing

them to take unpaid leaves of absence in violation of the Americans with Disabilities Act

("ADA"), and Title VII of the Civil Rights Act ("Title VII").  Respondent submitted statements

of position in response, denying any discrimination.

Following receipt of these charges, the EEOC began a systemic investigation into whether Respondent discriminates against pregnant employees at its fulfillment centers in violation of the ADA and Title VII.  On April 25, 2023, the EEOC requested data from Respondent regarding employees who sought light duty or a job modification as an accommodation for injury, disability and pregnancy from January 1, 2020, onwards in New Jersey, Connecticut, North Carolina and California -- the states in which the Charging Parties were employed.

Respondent objected to the request.  The parties engaged in negotiations over several months, during which the EEOC repeatedly narrowed the scope of its request, including the targeted timeframe, facility, accommodation requested and job title.  Respondent still refused to comply.  In November 2023, Respondent proposed that it produce files from its underlying database, consisting of hundreds of thousands of pages, rather than produce the requested information.  Among other issues, Respondent disputed the request to state whether an accommodation request was granted or denied, arguing that "there is too much subjectivity required."  The EEOC responded, clarifying the scope of the request.  Respondent still refused to produce the requested information.

On December 13, 2023, the EEOC issued the Subpoena reflecting its request for information, as narrowed through negotiations with Respondent.  On December 21, 2023, Respondent served on the EEOC a petition to revoke or modify the Subpoena, arguing *inter alia* that the Subpoena required Respondent to summarize the case files "in a manner that is subjective, incomplete, and/or non-meaningful and does not correlate to how the information is kept in the ordinary course of business" by marking each responsive accommodation request as granted, granted in part or denied.  Respondent stated that it "also has agreed to provide the

underlying case files from which **all** of the information that the EEOC seeks may be derived."

Respondent then produced a "fourth and final production," consisting of nearly 70,000 separate

files from the underlying database totaling 205,247 pages of documents.  The EEOC denied

Respondent's petition to revoke the Subpoena and set a compliance date of February 22, 2024.

Respondent then re-produced a text-searchable version of the more than 200,000 pages of

documents it produced in its "fourth and final production" but refused to produce the requested

information.

On March 15, 2024, the EEOC filed this Petition to enforce the Subpoena.  The Petition

seeks an order (1) compelling Respondent to produce, on a date to be fixed by this Court, all

documents and information responsive to Subpoena No. NY-A24-007; (2) granting Petitioner its

costs expended in this action and (3) ordering any other such relief as may be necessary and

appropriate.

## II.    STANDARD

Under Title VII, the EEOC is required to investigate charges of discrimination to

determine whether there is reasonable cause to believe that an employer is engaged in an

unlawful employment practice, *see* 42 U.S.C. § 2000e–5(b), and may issue subpoenas in

connection with its investigation, *id*. § 2000e–9.  In order "to enable the EEOC to make informed

decisions at each stage of the enforcement process, Title VII confers a broad right of access to

relevant evidence."  *McLane Co. v. EEOC*, 581 U.S. 72, 76 (2017).[1]  The EEOC is entitled to

"any evidence of any person being investigated . . . that relates to unlawful employment practices

covered by [Title VII] and is relevant to the charge under investigation."  42 U.S.C. § 2000e–

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and
citations are omitted, and all alterations are adopted.

8(a).  The Pregnancy Discrimination Act is included within Title VII, and discrimination based on sex includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions."  *Id.* § 2000e(k).  Employers are required to treat "women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work . . . ."  *Id.*

"Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII . . . when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002); *see* 42 U.S.C. § 12117(a) (incorporating sections 2000e–4, 2000e–5, 2000e–6, 2000e–8 and 2000e–9 of Title VII).  "Accordingly, the provisions of Title VII defining the EEOC's authority provide the starting point for [an ADA] analysis."  *Waffle House, Inc.*, 534 U.S. at 285-86.

The district court's "role in a proceeding to enforce an administrative subpoena is extremely limited."  *EEOC v. United Parcel Serv., Inc.*, 587 F.3d 136, 139 (2d Cir. 2009); *accord Walsh v. Upright*, No. 22 Misc. 247, 2023 WL 2207604, at *3 (S.D.N.Y. Feb. 23, 2023). "A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint.  Rather, a district court should satisfy itself that the charge is valid and that the material requested is relevant to the charge."  *McLane Co.*, 581 U.S. at 76.  "To obtain enforcement of an administrative subpoena, an agency must show only [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the agency's possession, and [4] that the administrative steps required have been followed."  *United Parcel Serv., Inc.*, 587 F.3d at 139; *accord Walsh*, 2023 WL 2207604, at *3.  "A subpoena that satisfies these criteria will be

enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable or that compliance would be unnecessarily burdensome." *United Parcel Serv., Inc.*, 587 F.3d at 139; *see McLane Co.*, 581 U.S. at 77.

## III.   DISCUSSION

The parties do not dispute that the investigation will be conducted pursuant to a legitimate purpose, that the charges are valid or that the required administrative steps have been followed.  Petitioner has shown that the information is relevant and not already in the EEOC's possession.  Respondent's arguments to prevent enforcement are unavailing.  As further explained below, the Petition to enforce the Subpoena is granted.

### A.   Relevance of Information

The information sought by Petitioner is relevant.  Showing relevancy in this context is a low bar, and courts have given the term "relevant" a "generous construction," allowing access to "virtually any material that might cast light on the allegations against the employer." *McLane Co.*, 581 U.S. at 76-77.  In considering whether the information is relevant, courts are not to "test the strength of the underlying complaint." *Id*. at 76.

The Subpoena targets information squarely at the center of the EEOC's investigation, whether that investigation is systemic or limited to the five individual charges.  The Subpoena seeks *inter alia* the date of the accommodation request; the nature of the requested accommodation (i.e., lifting restriction and/or additional breaks); whether the request for a lifting restriction and/or additional breaks was granted, granted in part or denied; and the date of the decision to grant, grant in part or deny the accommodation.  The Subpoena is limited to the five facilities at which the Charging Parties worked and to employees occupying the same positions as the Charging Parties.  How Respondent resolves requests for similar or identical

accommodation requests from non-pregnant employees holding the same positions and working in the same facilities as the Charging Parties is directly relevant to the question of whether accommodation requests due to pregnancy are treated differently by Respondent, and therefore whether the allegation of discrimination based on pregnancy -- either limited to the Charging Parties or on a systemic level -- is substantiated.

Respondent's argument that the charges do not specifically state that the Charging Parties were treated less favorably than non-pregnant employees *with similar medical restrictions* requires too much specificity from the charges; each charge properly states that Respondent discriminated against the Charging Parties for their pregnancies, and the EEOC now seeks data that is relevant to proving or disproving that alleged discrimination.

Respondent also argues that the five individual charges do not support a systemic investigation and therefore Petitioner cannot access the information requested. Respondent is incorrect. The EEOC received at least five charges alleging discrimination based on pregnancy across several of Respondent's facilities. The EEOC justifiably can seek data related to whether Respondent has a pattern or practice of discriminating against its pregnant employee at the identified facilities. *See, e.g.*, *EEOC v. Centura Health*, 933 F.3d 1203, 1205-07 (10th Cir. 2019) (enforcing subpoena for pattern and practice information from identified facilities where EEOC received multiple charges across multiple facilities). Respondent's cited cases in which a charge failed to justify nationwide data are inapposite because the EEOC does not seek nationwide data here. Regardless of whether a systemic investigation is proper, as described above, the information requested is sufficiently relevant to an investigation of the charges themselves because the request is limited to the facilities, positions and similar types of

6

accommodation requests as the Charging Parties' and therefore relevant to whether Respondent treated the Charging Parties differently than their similarly situated, non-pregnant peers.

Respondent also argues that the information sought by the disputed requests is legally irrelevant. Respondent is incorrect. Each charge alleges violations of Title VII's prohibition against pregnancy discrimination. As amended by the Pregnancy Discrimination Act, Title VII "requires courts to consider the extent to which an employer's policy treats pregnant workers less favorably than it treats nonpregnant workers similar in their ability or inability to work." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015). For pregnancy discrimination claims, "a jury may infer a discriminatory intent where the employer accommodates a large percentage of nonpregnant workers while failing to accommodate a large percentage . . . of pregnant workers." *Legg v. Ulster Cnty.*, 820 F.3d 67, 77 (2d Cir. 2016) (emphasis omitted). Petitioner seeks information to compare how Respondent treated pregnant workers' and non-pregnant workers' requests for similar accommodations. Respondent cannot narrow the EEOC's statutory rights only to documents showing the final determination in an iterative accommodations process; the context of interactions between the requesting employee and the employer are relevant, particularly where the charges allege failure to engage meaningfully in the interactive process.

Finally, to the extent Respondent challenges the merits of the allegations of discrimination, this enforcement action is not the proper forum to do so. "A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint." *McLane Co.*, 581 U.S. at 76.

### B.   Possession

The information at issue is not already within the EEOC's possession. As noted above, the Subpoena seeks *inter alia* the date of the accommodation request; the nature of the requested

accommodation (i.e., lifting restriction and/or additional breaks); whether the request for a lifting restriction and/or additional breaks was granted, granted in part or denied; and the date of the decision to grant, grant in part or deny the accommodation.  Respondent, on its own accord, turned over more than 200,000 pages of documents that it extracted from its database and then converted into PDF format.  This unilateral production does not satisfy the Subpoena.  First, the Subpoena states that "[i]mage files and printed copies of the database do not satisfy this [S]ubpoena" and specifically requires files to be produced in a sortable form, such as in spreadsheets.  Second, even if a production in PDF format could satisfy the Subpoena, Respondent's production still fails to provide information requested -- namely, whether the request was granted, granted in part or denied and the date of such decision.  Despite Respondent's argument to the contrary, any attempt by the EEOC to render a best guess regarding the outcome of each accommodation request does not alleviate Respondent's responsibility to provide the requested information.  Respondent -- not the EEOC -- is best positioned to navigate its database and produce the information.  Finally, Respondent cannot rely on Federal Rule of Civil Procedure 81 to supersede the EEOC's statutory right to "any evidence" in connection with its investigation, *see* 42 U.S.C. § 2000e–8(a) (Title VII added); 42 U.S.C. § 12117(a) (ADA).  Rule 81 expressly states that the federal rules apply in litigation over subpoena enforcement "except as otherwise provided by statute."  Fed. R. Civ. P. 81(a)(5).

### C.    Unnecessary Burden

The Subpoena does not impose an unnecessary burden on Respondent.  A subpoena for relevant information "will be enforced unless the party opposing enforcement demonstrates that . . . compliance would be unnecessarily burdensome."  *United Parcel Serv., Inc*., 587 F.3d at 139; *accord Walsh*, 2023 WL 2207604, at *3.  "[T]he decision whether a subpoena is overly

burdensome turns on the nature of the materials sought and the difficulty the employer will face in producing them." *McLane Co*., 581 U.S. at 81.  This is a "fact-intensive" inquiry.  *Id.* Respondent has not shown that "compliance threatens to unduly disrupt or seriously hinder normal operations of [its] business." *NLRB. v. Am. Med. Response, Inc*., 438 F.3d 188, 193 n.4 (2d Cir. 2006) (noting that the respondent abandoned its argument as to burden after conceding the subpoenas at issue would not disrupt its operations).  It appears from documents produced regarding the Charging Parties' accommodation requests that Respondent tracks the disputed information.  These produced documents reference the status of the accommodation request and/or whether the manager was able to accommodate the request.  Respondent has not shown that compiling this responsive information would disrupt operations.  The request seeks information for approximately one thousand case files; Respondent has over one million employees in the United States. *See* 2023 Employer Information Report (EEO-1 Component 1), Amazon.com, Inc., at 2,

https://assets.aboutamazon.com/64/79/d3746ef14fd99cc6be94532c9db5/2023-eeo1-amazon-report.pdf [https://perma.cc/J752-EUMH] (identifying total U.S. workforce as 1,049,676).

Respondent's argument that the Subpoena will require Respondent to disclose work product also is unavailing.  First, the filing on which Respondent relies for its argument was struck from the docket and therefore is irrelevant for purposes of this action.  Second, the information sought is not protected from production.  "[T]he purpose of the work product privilege is to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries." *New York Times Co. v. U.S. Dep't of Just*., 939 F.3d 479, 489 (2d Cir. 2019).  The Subpoena does not request information protected by the work-product doctrine, but rather

requests factual information regarding the outcome of accommodation requests. That the

information must be compiled following an enforcement action does not render it work product.

## IV.    CONCLUSION

For the foregoing reasons, the Petition to enforce the Subpoena is **GRANTED**.

Respondent shall produce all documents and information responsive to Subpoena No. NY-A24-

007 issued by New York District Office Acting Director Timothy Riera by **August 9, 2024**.

If Petitioner seeks reasonable costs expended in this action, Petitioner shall submit a

supplemental affidavit regarding costs by **July 24, 2024**. Respondent may file a response by

**July 31, 2024**. No reply shall be filed unless requested by the Court.

Respondent's motions for leave to file a sur-reply at Dkt. 29 and for oral argument at Dkt.

26 are **DENIED** as moot.

The Clerk of Court is respectfully directed to close the motion at Dkt. 29.

Dated: July 11, 2024
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**